LEIGH M. CLARK, Retired Circuit Judge.
This appellant had pleaded not guilty to an indictment that charged her with theft of property in the second degree by allegations in the indictment that the total value of the several items stated therein exceeded $25.00 in value and were “taken from or in a building where said property was stored or kept for sale, with the intent to deprive the owner of said property.” The only actual controversy between the parties on the trial was as to the identity and value of the items of the property stolen by this appellant. According to the undisputed testimony, this appellant and an individual by the name of Mildred Ann Hardnick and some other persons were cooperating with one another in “shoplifting” at the store of Family Dollar Stores, Inc.; they were apprehended soon after they left the store and were arrested by law enforcement authorities and taken to the city jail, where they were questioned. This appellant made a statement in her own handwriting admitting her part in the shoplifting proceeding and that she had obtained “3 sweaters and a sweat suit.” She testified that she did not actually take three sweaters and a sweat suit from the store. She testified:
“Dale Walton [one of the officers] told us we would both get a misdemeanor if we’d cooperate with them and just claim the stuff and drop both of them down to a misdemeanor, so I told Mildred before— When we was in there, me and Mildred was talking after they had left out. Told me, said, I’ll claim the three sweaters and the sweat suit and she said Okay. So, that’s how I got — That’s why I put on the statement the three sweaters and the sweat suit.”
She denied in her testimony taking anything from the store other than one sweater and a sweat suit otherwise referred to in the transcript as “Sweat Pants” and a “jump suit,” each having the “value of $7.99.” The total value, apparently undisputed, of three sweaters and a sweat suit is $31.96.
*1387 The record shows that the indictment against this appellant alleged a large number of other items, in addition to the three sweaters and sweat suit as having been stolen by her, with an aggregate value of $91.89. It appears also that Mildred Hard-nick or Mildred Hardin, whatever her correct name is, which by the transcript was never clarified, was also indicted for theft of some, if not all, of the same items. It seems also that the prosecution elected not to prosecute this appellant for a theft of any of the items other than three sweaters and the sweat suit. At the time of the trial of the instant case, Mildred Hardin (Mildred Hardnick) had not been tried, and she was not a witness on the trial of the instant case.
In its oral charge to the jury, the trial court made it clear to the jury that it could not return a verdict in the case of not guilty. It stated to the jury:
“... You will either return a verdict of guilty of theft in the second degree where the value is over $25.00 or you will return a verdict for theft in the third degree where the value is derived [sic] under $25.00. That’s your determination to make in this case as to what the value of the property was.... ”
The jury returned a verdict finding defendant guilty of theft in the second degree, and she was adjudged guilty accordingly. Upon due notice that the State would proceed against her under the Habitual Felony Offenders Act, a sentence hearing was conducted at which it was determined that she had been previously convicted of three felonies, and the court sentenced her to imprisonment for eighteen years. The applicable statutes mandated a sentence for life or not more than 99 years but not less than 15 years. Code §§ 13A-8-4(b), 13A-5-6(a)(3) and 13A-5-9(c)(l).
The only issue presented by appellant pertains to the testimony of Chief Investigator Ben Cowart of the Attalla Police Department, whose first connection with the instant case was when appellant and Mildred Hardin (Hardnick) and some of the stolen property were brought by other officers to the Attalla Police Headquarters. Upon being called as a witness for the State, he testified that he had brought to the court in a white plastic bag the items of merchandise that had been stolen. He was in the process of opening the bag and taking therefrom the items therein, which had been in his custody. The following then occurred during his direct examination:
“Q. Since that time has anyone tampered with to your knowledge, or tampered with the evidence that’s in the bag you brought in?
“A. No, sir.
“MR. HART [District Attorney]: Your Honor, we’d ask that this be marked State’s Exhibit 3 for identification.
“THE COURT: I believe he testified there were other items other than what she had admitted here in this. I’m not going to allow those in. You can take them out and get them identified and introduce those but not all the entire bunch.
“Q. Chief Cowart, I want to ask you to open up the sack that you brought in and if from that sack you can pick out the five items that she identified that day—
“MR. DOWNS [Defendant’s attorney]: Then, before you open it up, may I ask you a question on voir dire?
[[Image here]]
“Q. Then, can you tell us before you open the bag which items she identified?
“A. No, sir. Not each individual item. “MR. DOWNS: Judge, we move to exclude any further testimony.
“THE COURT: Overruled.
“MR. DOWNS: Your Honor, we except to having — we except to having him identify any of the items that this particular girl is charged with taking. He says he could not identify them.
“THE COURT: He said he couldn’t describe them without seeing them.
“MR. DOWNS: Excuse me.
“(VOIR DIRE EXAMINATION CONTINUED)
“BY MR. DOWNS:
*1388 “Q. Chief Cowart; once you open that bag and see the individual items will you be able to designate which ones were taken by Delores McKinney?
“A. No, sir. Each item was not individually marked at. that time because in her statement she had said that she took and she pointed out which one, so—
“Q. So, when you open that bag and you take the items you’re going to have to guess at which ones she admitted to taking?
“A. Other than the sweat suit.
“Q. Other than the sweat suit you cannot identify to us which items this girl supposedly took?
“A. No, sir.
“MR. HART: Your Honor, may we approach the bench?
“THE COURT: You may.
“(AT THE BENCH)
“MR. HART: Your Honor, because there’s already been testimony that items in this bag came from both this Defendant and another Defendant and because this Defendant has already signed a confession stating that these sweaters and sweat suits were taken by her I feel that the highest and best evidence of the value of those rests in the items that are in this bag and just for the purposes of determining the value of what everything is in the bag is without trying to charge this Defendant with taking more than what she as [sic] admitted to taking we would ask that he be allowed to go into the bag and go into the price of each item that’s in the bag. Strictly as it relates to her confession admitting what items she did take from the store.
“MR. DOWNS: Your Honor, we would object. He’s just said that he could not identify the items other than the sweat suit and the highest and best evidence would be Mrs. Gamblin’s testimony as District Manager as to the value of the itéms.
“MR. HART: Your Honor, she has testified that the price tags were on the items and that would be the highest and best evidence due to the price tag on the items at the time.
“MR. DOWNS: Based on what Mr. Cowart just testified to he cannot identify the items other than possible sweat pants. We object.
“THE COURT: I’m going to recess until in the morning and I’ll give you a ruling on that in the morning.”
The following morning when the parties announced ready, the following occurred:
“(AT THE BENCH)
“MR. HART: Judge Smith, at the conclusion yesterday I made a motion to ask us to be allowed to examine all the tags in the bag. After we left yesterday Chief Cowart left his records, and from his records he can identify which items were identified by this Defendant and which items were identified by the other girl who was interrogated, so I withdraw that motion I made yesterday and wish to call Chief Cowart to testify as to which items.
“THE COURT: You may proceed.
“(IN OPEN COURT)
“MR. HART: Your Honor, the State calls Chief Ben Cowart.
“BEN COWART: RESUMED
“FURTHER DIRECT EXAMINATION
“BY MR..HART:
“Q. Chief Cowart, of course, you are still under oath from yesterday — From yesterday’s testifying?
“A. Yes.
“Q. Chief Cowart, today can you now identify out of that sack of sweaters, sweatpants that you have with you, can you identify which items Delores McKinney picked out at the police station as having been taken from the store by her?
“A. Yes, sir, I can.
“Q. How are you able to identify the items she took?
“A. After I left the Courtroom yesterday afternoon I went back and reviewed my records.
“Q. Did your records tell you which items she had took as opposed to which items the girl had took?
*1389 “A. Yes.
“Q. Rather, she had identified as opposed to—
“A. Yes, sir.
“MR. DOWNS: Your Honor, we ask for the record to be produced that he had used to refresh his memory, if he’s got them with him.
“THE WITNESS: Ido.
“MR. DOWNS: We’d like to be given an opportunity to examine them, Your Honor.
“(INSTRUMENT HANDED TO MR. DOWNS)
“MR. DOWNS: Your Honor, may I ask a question on voir dire?
“THE COURT: You may.
“VOIR DIRE EXAMINATION.
“BY MR. DOWNS:
“Q. Chief Cowart, this appears to be a statement taken from an individual named Mildred Ann Hardnick?
“A. Hardnick.
“Q. And that’s what you are using to base your testimony as to what items were this girl’s and what items were the other girl’s.
“A. Yes, sir.
“MR. DOWNS: Judge, we object to him using the statement of some other person that’s not here, Judge. It’s hearsay as to this Defendant.
“THE COURT: Overruled. If he can identify them from—
“MR. DOWNS: Your Honor, we object and like to have this marked.
“THE COURT: I’ve overruled your objection.
“MR. DOWNS: Like to have this marked.
“(Whereupon an instrument was handed to the Court Reporter and marked for identification as Defendant’s Exhibit No. 1 at this time.)
“MR. HART: We are asking permission to substitute a copy since this is the original.
“THE WITNESS: That case is still pending.
“MR. DOWNS: As to Defendant’s Exhibit 1, we object to him testifying or refreshing his recollection from a statement made by another person is not here who I have not right to cross-examine.
“THE COURT: This witness is the one that’s testifying. You have a right to cross-examine him.
“MR. DOWNS: He says its based on what he learned from the statement.
“THE COURT: That’s some notes he used to refresh his recollection.
“DIRECT EXAMINATION (CONTINUED)
“BY MR. HART:
“Q. Chief Cowart, can you now pick out of that sack of items you have the items that Delores McKinney or Patricia Sturgeon [name by which Defendant was otherwise known] identified as the ones she took from the store?
“A. Yes, sir.
“Q. Will you now pull out the items that she picked out?
“MR. DOWNS: May I ask a question on voir dire?
“THE COURT: You may.
“VOIR DIRE EXAMINATION.
“BY MR. DOWNS:
“Q. Chief Cowart, are you doing this more or less by process of elimination? Are you taking the items that this Hardnick girl has admitted to and then excluding or assuming that everything else was items taken by this girl, McKinney?
“A. The items that will be taken out of the items that were identified by the other are [sic] her accomplice — The list of items is in here identifying each item—
“Q. But I’m talking about the items this girl took right here or you say she took. You’re determining that based on what this other girl told you?
“A. Well, it’s the same thing except what she told me — This is my handwriting.
“Q. But, again, it’s something someone else told you; is that correct?
*1390 “A. It’s her statement, yes, sir.
“Q. The Hardnick girl’s statement?
“A. Yes, sir.
“Q. And that’s what yoü are using in determining which items were taken by Delores McKinney?
“A. Yes, sir.
“MR. DOWNS: Your Honor, we object.
“THE COURT: I have ruled on that already, Mr. Downs.
“MR. DOWNS: I’m sorry, we except, Your Honor.
“DIRECT EXAMINATION (CONTINUED)
“BY MR. HART:
“Q. Chief Cowart, will you now hand to me the items that you can identify as being picked out by Delores McKinney that day as the one’s she took from the store?
“A. These (Indicating).
“MR. HART: Your Honor, we’d ask that these be marked for identification as State’s exhibits.
“(Whereupon the heretofore mentioned instruments were marked for identification as State’s Exhibit Nos. 3 through 7, both inclusive, at this time).
“Q. Chief Cowart, are you certain from checking your records that these are the sweaters and pants that Delores McKinney identified that day as having been taken from the store by her?
“A. Yes, sir.
“MR. HART: Your Honor, we’d offer State’s Exhibits 3 through 7 into evidence.
“MR. DOWNS: Your Honor, we object on the same ■ grounds that we previously assigned.
“THE COURT: Overruled.
“(Whereupon the heretofore mentioned instruments marked for identification as State’s Exhibit Nos. 3 through 7, both inclusive, were received into evidence as such and filed with the Clerk of the Circuit Court of Etowah County.)
“MR. HART: That’s all I have for Chief Cowart.
“CROSS-EXAMINATION
“BY MR. DOWNS:
“Q. Chief Cowart, you did tell us while you were seated in that chair shortly before the break that you could not tell us which of these items came from which girl?
“A. Yes, sir, I did.
“Q. And after the break, then or after, after we recessed yesterday you then changed your mind and said you now are able to?
“A. After reviewing my records. Went back through the file on the case and after—
“Q. Prior to you coming up here to testify yesterday did you review your records?
“A. No, sir, I didn’t.
“Q. Do you not think it’s important to review your records when you are going to testify in a case?
“A. Well, this one is not the case. This was the case that is not being tried today.
“Q. So, again, your testimony is based on what you learned in another case?
“A. It’s a companion case.
“MR. DOWNS: Yes, sir. I have no further questions.
“MR. HART: I have no further questions, Your Honor.
“THE COURT: You may step down.”
We have difficulty in determining with certainty just what was meant by everything that was said by the parties concerned as shown by the portion of the transcript quoted above, but it is clear to us that State’s Exhibit No. 3 is a blue sweater, State’s Exhibit No. 4 is a pair of “Sweat Pants,” State’s Exhibit No. 5 is a pink/white sweater, State’s Exhibit No. 6 is a black/white sweater and State’s Exhibit No. 7 is a blue/white sweater. Unfortunately, we do not find in the transcript a copy of Defendant’s Exhibit No. 1, referred to hereinabove as the statement made by the “Defendant in the other case.”
We are not convinced that there was a meeting of the minds of the attorneys for *1391 the respective parties and the witness, Chief Investigator Cowart, as to all that was said and referred to in the portion of the transcript we have quoted above; yet we are convinced that it cannot be determined that the trial court was in error in permitting Chief Investigator Cowart to testify, as he did, in effect that between the time he testified one day and the time he testified the following day he consulted a memorandum to aid him in his recollection as to what items this appellant had been heard or seen to have identified as a sweat suit and three sweaters that she herself stole from the property of Family Dollar Stores, Inc. We are so convinced notwithstanding some ambiguity in the testimony of Chief Investigator Cowart in answering questions asked him on voir dire examination by defendant’s counsel, which perhaps is subject to the construction that, in testifying as to the items said or shown by this appellant to be items stolen by her, he was not relying upon his refreshed or revived recollection that she had done so, but solely upon what the other defendant, Mildred Hardnick or Mildred Hardin had stated in writing that she had stolen. In reaching this conclusion, we also take into consideration the fact that the trial judge was apparently led to believe by what the witness said and demonstrated that he was not basing his testimony on what the other defendant had said or done or written in particularizing the items she had stolen. In the absence from the transcript of defendant’s Exhibit No. 1, we are unable to say with reasonable certainty that it effectuated a revival of the witness’ then present recollection or a refreshment of his memory as comprehensively considered in Gamble, McElroy’s Alabama Evidence, § 116.02 (1977), or, on the other hand, it constituted Past Recollection Recorded. Whether the trial court deemed it the one or the other, it correctly held, in our opinion, that the testimony under consideration was admissible. This conclusion accords with what Judge McElroy specifically stated in § 116.01, as follows:
“The second use of a memorandum occurs when the witness, after examining the memorandum, cannot testify to an existing knowledge of the fact, independent of the memorandum. This use of the memorandum is often referred to as Past Recollection Recorded; and if the witness testified that, at or about the time the memorandum was made, he knew its contents and knew them to be true, then both his testimony and the memorandum become admissible. The memorandum and the witness’ testimony are the equivalent of a present positive statement of the witness affirming the truth of the contents of the memorandum. McElroy’s Alabama Evidence, § 116.01 (1977).”
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.